UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD F. FLYNN, KEVIN F. FLYNN, JOHN P. McMAHON, JOSEPH F. McQUAID, KEVIN D. LARSON, and WALTER P. HANLEY, | ) ) ) ) ) | |
| | ) | No. 10 C 1970 |
| Plaintiffs, | ) ) | |
| | ) | Judge Ruben Castillo |
| v. | ) ) | |
| RICHARD LEVY, not individually, but solely as Personal Representative of the ESTATE OF EUGENE P. HEYTOW, and as Trustee for the EUGENE P. HEYTOW TRUST, | ) ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Donald F. Flynn, Kevin F. Flynn, John P. McMahon, Joseph F. McQuaid, Kevin D. Larson, and Walter P. Hanley (collectively, "Plaintiffs") bring this diversity action against Richard Levy ("Levy"), not individually, but solely as Personal Representative of the Estate of Eugene P. Heytow (the "Estate"), and as Trustee for the Eugene P. Heytow Trust (the "Trust"). (R. 39, Second Am. Compl.) Plaintiffs allege a state law claim for equitable contribution and ask for monetary and declaratory relief. (*Id.* ¶¶ 36-45.) Presently before the Court is Levy's motion to dismiss Plaintiffs' second amended complaint under Federal Rule of Civil Procedure 12(b)(6). (R. 42, Levy's Mot.) For the reasons stated below, Levy's motion is denied in part and granted in part.

## RELEVANT FACTS

1

Plaintiffs were officers, directors, and/or shareholders of Emerald Casino, Inc. ("Emerald") from at least 1998 through January 31, 2001 (the "Period"). (R. 39, Second Am. Compl. ¶¶ 4, 11-16.) Eugene P. Heytow ("Heytow") was also a director and shareholder of Emerald during the Period. (*Id.* ¶¶ 4, 10.) After Emerald entered Chapter 7 bankruptcy proceedings, the trustee for the bankruptcy estate (the "Bankruptcy Trustee") filed an adversary proceeding (the "Adversary Proceeding") against Plaintiffs in the United States Bankruptcy Court for the Northern District of Illinois. (*Id.* ¶ 2.) In the Adversary Proceeding, the Bankruptcy Trustee alleges, *inter alia*, that Plaintiffs violated the Emerald Shareholders' Agreement dated August 6, 1999 (the "Shareholders' Agreement") and breached their fiduciary duties to Emerald during the Period. (*Id.* ¶ 3.) According to the Bankruptcy Trustee, Plaintiffs' purported breaches caused Emerald to lose its Illinois Gaming License (the "License"). (*Id.*) Plaintiffs have denied the Bankruptcy Trustee's allegations and have been defending the Adversary Proceeding. (*Id.*)

In the present action, Plaintiffs allege that the Bankruptcy Trustee did not name Heytow as a defendant in the Adversary Proceeding because he was a client of the Bankruptcy Trustee's counsel of record in that proceeding. (*Id.* ¶ 4.) Nonetheless, Plaintiffs allege that Heytow shared a position and an agreement common with them and, by virtue of this, owes a proportionate share of any liability Plaintiffs may incur in the Adversary Proceeding, and also shares joint and common obligations to pay for legal fees and expenses incurred in defense of the Adversary Proceeding. (*Id.* ¶ 5.) In particular, Plaintiffs point to Heytow's participation as a director in board meetings held on August 12, 1999, and December 22, 1999. (*Id.* ¶¶ 18-19.) At the August meeting, all members of the Board of Directors, including Heytow, executed a Unanimous

Consent relating to the sale of shares of Emerald stock and the expenditure of capital. (*Id.* ¶ 18.) At the December meeting, the directors voted unanimously for resolutions and approvals related to the expenditure of capital for the construction of a casino by Emerald. (*Id.* ¶ 19.) In the Adversary Proceeding, the Bankruptcy Trustee alleges that the actions authorized by the Board of Directors on those two occasions violated Illinois Gaming Board ("IGB") Rules and Regulations in contravention of the Shareholders' Agreement to which Heytow and Plaintiffs were parties.[1] (*Id.* ¶¶ 20-24.) The Bankruptcy Trustee further alleges that Plaintiffs, as former officers and directors of Emerald, owed fiduciary duties to Emerald. (*Id.* ¶ 31.) According to the Bankruptcy Trustee, Plaintiffs breached these fiduciary duties at the August and December 1999 meetings by failing to prevent Emerald from violating IGB Rules and Regulations. (*Id.*) In the present action, Plaintiffs allege that Heytow owed the same fiduciary duties to Emerald that the other directors owed, if any. (*Id.* ¶ 32.)

Because Heytow was not named as a defendant by the Bankruptcy Trustee in the Adversary Proceeding, Heytow, the Estate, and the Trust have not paid any portion of the legal fees and expenses incurred in defending the Adversary Proceeding and dispute having an obligation to pay a proportionate share of any liability Plaintiffs may incur in the Adversary Proceeding. (*Id.* ¶¶ 4-5, 35.)

## PROCEDURAL HISTORY

---

[1] Plaintiffs, other than Donald Flynn, deny that they executed or were parties to the Shareholders' Agreement but argue in the alternative that, should they be found to be parties, Heytow should share their liability as a party to the Shareholders' Agreement. (R. 39, Second Am. Compl. ¶ 21.)

On March 30, 2010, Plaintiffs filed their original complaint in this action, naming Heytow as defendant and requesting as relief that Heytow pay a proportionate share of legal fees and expenses in the Adversary Proceeding. (R. 1, Compl.) On June 21, 2010, Heytow filed a motion to dismiss. (R. 16, Heytow's Mot.) In response, on July 9, 2010, Plaintiffs filed an amended complaint, expanding their request for relief to include a request for a declaratory judgment that Heytow is liable to pay his proportionate share of any relief granted in the Adversary Proceeding. (R. 20, First Am. Compl.) Subsequently, the Court ruled that Heytow's motion to dismiss was moot and granted Heytow an extension of time to file a responsive pleading to the amended complaint. (R. 24, Mot. Dismiss Order.) On August 18, 2010, Heytow again filed a motion to dismiss. (R. 25, Heytow's Second Mot.) On August 26, 2010, Heytow died. (R. 39, Second Am. Compl. ¶ 8.)

Following Heytow's death, the Court granted Plaintiffs leave to move for substitution of party after they received written notification of the appointment of a representative of the Estate and denied Heytow's motion to dismiss without prejudice to its renewal once Plaintiffs filed an amended complaint. (R. 28, Mot. Substitute Order.) On April 15, 2011, Plaintiffs filed their second amended complaint, naming Levy as defendant, not individually, but solely as Personal Representative of the Estate and as Trustee for the Trust. (R. 39, Second Am. Compl.)

On May 15, 2011, Levy filed the present motion to dismiss pursuant to Rule 12(b)(6). (R. 42, Levy's Mot.) In his motion, Levy argues that Plaintiffs fail to state a claim for equitable contribution under either the Illinois Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. 100/2(a), or Illinois common law. (*Id.* at 3.) Levy also argues that Plaintiffs fail to allege sufficient facts to support any legal theory under which they would be entitled to a declaratory

4

judgment. (*Id.* at 4, 17.) According to Levy, if Plaintiffs' legal theory for a declaratory judgment is based on their right to equitable contribution, it fails for the same reasons Plaintiffs' equitable contribution claim fails. (*Id.* at 17-18.) Levy also maintains that if Planitiffs' legal theory for a declaratory judgment is that Heytow breached the Shareholders' Agreement, Plaintiffs have failed to plead the elements for a breach of contract claim.[2] (*Id.* at 18-19.)

In their response, Plaintiffs clarify that they seek relief only under a classic equitable contribution theory under Illinois common law and concede that other bases for relief are inapplicable. (R. 43, Pls.' Resp. at 1, fn. 1.) The Court agrees that the other causes of action are inapplicable and focuses its discussion on the common law right to equitable contribution.[3]

## LEGAL STANDARDS

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must

---

[2] Although the Court granted Levy's request for an extension of time to file a reply in support of his motion to dismiss, Levy has not filed a reply. (R. 45, Min. Entry.)
[3] Plaintiffs do not qualify for relief under the Illinois Joint Tortfeasor Contribution Act as their breach of contract and breach of fiduciary duty allegations do not constitute "tort" claims. *See Hennepin Drainage & Levee Dist. v. W.H. Klingner*, 543 N.E.2d 967, 969 (Ill. App. Ct. 3d Dist. 1989) (holding that a party subject to liability in contract cannot make a valid claim for contribution); *Kinzer v. City of Chi.*, 539 N.E.2d 1216, 1220 (Ill. 1989) (holding, in part, that an action for breach of fiduciary duty is not a tort in Illinois, but rather is controlled by the substantive laws of agency, contract, and equity.) Nor have Plaintiffs pled the elements of a breach of contract claim where they do not allege an enforceable contract between themselves and Heytow or that they substantially performed. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.")

describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

Plaintiffs argue that they have alleged a classic equitable contribution claim under Illinois law. (R. 43, Pls.' Resp. at 1.) "In an action for common law contribution, the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation." *Ruggio v. Ditkowsky*, 498 N.E.2d 747, 750 (Ill. App. Ct. 2d Dist. 1986). To recover under a theory of common law contribution, the co-obligor must demonstrate "that he has paid more than his just proportion of the joint indebtedness" as well as the amount of that excess. *Id.* In their second amended complaint, Plaintiffs allege two joint financial obligations: (1) the potential liability in the Adversary Proceeding and (2) legal fees and expenses incurred for their defense in the Adversary Proceeding. (R. 39, Second Am. Compl. ¶¶ 1, 5.) Levy argues that Plaintiffs have not pled the existence of a shared joint financial obligation to a third party to which Plaintiffs were compelled to pay more than their proportionate share. (R. 42, Levy's Mot. at 7.)

I.   **Potential liability in the Adversary Proceeding**

With regard to the potential liability in the Adversary Proceeding, Plaintiffs argue that, should the Bankruptcy Trustee succeed in the Adversary Proceeding, Levy would be equally liable, yet Plaintiffs would be inequitably forced to pay Levy's share of damages. (R. 43, Pls.' Resp. at 2.) By this account, the joint obligation arises because Plaintiffs and Heytow violated the Shareholders' Agreement allegedly executed by Plaintiffs and Heytow, and breached fiduciary duties owed to Emerald as its directors and officers, thereby imperiling Emerald's License and giving rise to the Adversary Proceeding. (*Id.*)

In Illinois, the common law right to equitable contribution typically arises in the context of co-insurers, but Illinois courts have regularly found a right to equitable contribution outside of that context where the parties had a joint financial obligation to a third party created by agreement or statute. *See, e.g., Roe v. Estate of Farrell*, 372 N.E.2d 662, 665 (Ill. 1978) (joint tenancy); *Ruggio*, 498 N.E.2d at 749 (co-signed promissory notes); *Tembrina v. Simos*, 567 N.E.2d 536, 538 (Ill. App. Ct. 1st Dist. 1991) (mortgage held by partnership where each partner was jointly and severally liable for payments); *Fletcher v. Marshall III*, 632 N.E.2d 1105, 1106 (Ill. App. Ct. 2d Dist. 1994) (co-tenant on apartment lease); *Aardema v. Fitch*, 684 N.E.2d 884, 890 (Ill. App. Ct. 1st Dist. 1997) (common corporate obligation); *see also Kudlicki v. MDMA, Inc.*, No. 05-02589, 2006 WL 1308617, at *4-5 (N.D. Ill. May 10, 2006) (noting that "while it appears that most equitable contribution lawsuits arise in the context of co-insurers," common law contribution claims have also been extended to "instances where the parties, either by agreement or by statute, had a financial obligation to a third party.") Levy argues that Plaintiffs' allegations of their alleged potential liability in the Adversary Proceeding do not constitute a joint

7

financial obligation because Plaintiffs have failed to plead the existence of any agreement or statute that obligates Heytow and Plaintiffs to Emerald or the Bankruptcy Trustee for a financial obligation. (R. 42, Levy's Mot. at 8, 12-17.)

Here, Plaintiffs have only identified one agreement that may serve as the basis for this claim: the Shareholders' Agreement. (R. 39-1, Ex. A at 35-60.) Levy notes that the language of the Shareholders' Agreement sets out strictly individual obligations and does not create a joint financial obligation to a third party. (R. 42, Levy's Mot. at 13) ("Each Shareholder shall . . . . Each Shareholder further agrees . . .") (emphasis omitted). In response, Plaintiffs argue that "[e]ach of Emerald's directors owed common and joint obligations to the corporation under the Shareholders' Agreement both individually, and when acting as directors, jointly as a Board." (R. 43, Pls.' Resp. at 9.) According to Plaintiffs, because some of the actions cited by the Bankruptcy Trustee as actionable in the Adversary Proceeding—the actions at issue in this case—occurred at the board level, the obligations at issue in this case should be interpreted as joint obligations. (*Id.* at 8.) Plaintiffs offer no legal support, however, for reading a joint obligation into a Shareholders' Agreement written in individual terms. Unlike co-signors on a promissory note, or parties to mortgage agreements or apartment leases, where the parties agree to be jointly liable for a financial obligation, nothing in the Shareholders' Agreement supports Plaintiffs' position that it created anything other than an individual obligation between each shareholder and Emerald. *See, e.g., Ruggio*, 498 N.E.2d at 749 (co-signed promissory notes); *Tembrina*, 567 N.E.2d at 538 (mortgage held by partnership); *Fletcher*, 632 N.E.2d at 1106 (co-signed apartment lease).

Plaintiffs next argue that the joint obligation was statutorily created. (R. 43, Pls.' Resp. at 10.) According to them, Plaintiffs and Heytow "owed common fiduciary obligations as directors of Emerald and as a product of the 'state-sanctioned contracts' constituting Emerald's corporate structure." (*Id.*) In support, Plaintiffs rely on *Aardema v. Fitch*, 684 N.E.2d at 890, arguing that it stands for the proposition that "when a member of a corporate board of directors is found liable for actions taken by the board as a whole, that member has a right of contribution against all the other board members who voted for said actions." (R. 43, Pls.' Resp. at 4.) In *Aardema*, the corporation's board collectively decided not to pay certain taxes owed to the Internal Revenue Service ("IRS"). 684 N.E.2d at 886. A corporate director sued fellow directors for contribution when he was the only director assessed a penalty by the IRS for the corporation's failure to pay the taxes. *Id.* In reversing the dismissal of the corporate director's contribution claim, the Illinois appellate court held that pursuant to the Illinois Business Corporation Act of 1983, 805 Ill. Comp. Stat. 5/1.01 *et seq.*, (the "Act"), the directors were under a joint obligation. *Id.* at 890 (citing 805 Ill. Comp. Stat. 5/1.01 *et seq.*). The court reasoned:

> Although [the Internal Revenue Code] does not impose a common obligation upon defendants and plaintiff, the [Illinois Business Corporation Act] conclusively presumes that a corporate director who is present at a meeting of the corporate's board of directors "at which action on any corporate matter is taken" assents to the corporate action unless the director dissents. Further, "[a]ny director against whom a claim is asserted under [section 8.65] and who is held liable thereon, is entitled to contribution from the other directors who are likewise liable thereon."

*Id.* (internal citations omitted). Expanding on the principles underlying Section 8.65(d) of the Act, that all members of a board are jointly liable and entitled to contribution for board actions, the *Aardema* court held that it would be inequitable to allow the plaintiff director to bear a

9

disproportionate share of the tax liability simply because the IRS fortuitously chose to file suit against him. *Id.*

As in *Aardema*, an obligation that arose from actions undertaken by the Emerald Board of Directors has been placed upon certain members of the Board of Directors and not on others, despite the Act's conclusive presumption that a corporate director who is present at a meeting of the corporation's board assents to the corporate action. Precluding Plaintiffs from pursuing a contribution action against Levy would lead to the "inequitable result" that Heytow, although responsible for some of the actions leading to Emerald's loss of its License, is immune from liability because the Bankruptcy Trustee opted to proceed against Plaintiffs, but not Heytow allegedly because of a conflict of interest with Heytow's attorney. *Aardema*, 684 N.E.2d at 890. Plaintiffs here have pled that the actions taken by the Emerald Board of Directors in the August 12, 1999, and December 22, 1999 meetings-of which Heytow was a part-may give rise to a liability. (R. 39, Second Am. Compl. ¶¶ 18-35.) *Aardema* provides that a director who is held liable for the actions of the board is entitled to contribution from other directors who assented to the actions giving rise to liability. 684 N.E.2d at 890. The Court finds that Plaintiffs have pled facts sufficient to establish that they shared a joint financial obligation with Heytow pursuant to statute and to support a claim for common law contribution for the potential liability that may arise in the Adversary Proceeding as a result of the Board's actions in the August 12, 1999, and December 22, 1999 meetings.

Seeking to avoid this result, Levy argues that *Aardema* is distinguishable in that the officers and employees there owed each other a right of contribution to pay their proportionate share of common corporate debt because a federal tax statute created a method by which the IRS

10

could collect taxes owed by the corporation from certain officers. (R. 42, Levy's Mot. at 14.) According to Levy, liability in *Aardema* stemmed from a corporate liability that was merely placed on the director individually, by operation of statute, whereas here, each plaintiff's liability arises from his personal breach. (*Id.*) This argument fails because *Aardema* specifically rejected the notion that the joint nature of the obligation arose from federal law. 684 N.E.2d at 890. Rather, *Aardema* identifies the source of the common obligation as the Act and its provisions for joint liability and contribution. *Id.* While the reasoning in *Aardema* is less than clear, the Court finds *Aardema* controlling and persuasive.

## II. Legal fees and expenses incurred by Plaintiffs in the Adversary Proceeding

Next, the Court considers whether Plaintiffs have sufficiently pled a claim for common law contribution that would entitle them to a proportionate share of legal fees and expenses. Again, the common law right to equitable contribution in Illinois has been extended outside of the co-insurer context to situations where the parties had a joint financial obligation to a third party created by agreement or statute. *Kudlicki*, 2006 WL 1308617, at *5. Levy argues that Plaintiffs fail to allege a legal basis under which Heytow, the Estate, or the Trust owe any obligation to Plaintiffs, Plaintiffs' attorneys, or the Bankruptcy Court for legal fees and expenses incurred during the course of the Adversary Proceeding. (R. 42, Levy's Mot. at 8-11.) Specifically, Levy argues that Plaintiffs fail to plead: (1) a joint obligation owed to a third party; (2) that they were compelled to pay the legal fees and expenses they seek; and (3) that they have paid more than their proportionate share. (*Id.*)

As discussed above, the Shareholders' Agreement does not create any joint financial obligation between Plaintiffs and Heytow to a third party. Accordingly, the Court looks to

11

whether the alleged joint obligation is statutorily created. Plaintiffs again rely on the reasoning in *Aardema* to support their position. According to Plaintiffs, *Aardema* demonstrates the inequities that would result if Plaintiffs were forced to pay Levy's share of legal fees. (R. 43, Pls.' Resp. at 11.) *Aardema*, however, did not involve a claim for contribution of the legal fees expended by the plaintiff director in defending himself against the IRS, nor did it mention such legal fees, and is therefore distinguishable. 684 N.E.2d at 885-86. Plaintiffs cite no separate authority supporting the proposition that there exists a joint obligation upon a director, officer, or shareholder to pay for the legal fees or expenses incurred by a co-director, -officer, or -shareholder in actions related to the corporation. Additionally, the Act upon which *Aardema* was based, is less than clear as it does not mention whether a director may also recover attorney's fees from his or her co-directors. *See* 805 Ill. Comp. Stat. 5/8.65(d). Levy relies on *Canadian Pacific Railway Company v. Williams-Hayward Protective Coatings, Inc.*, No. 02-8800, 2004 WL 2108413, at *3 (N.D. Ill. Sept. 21, 2004), to argue that Plaintiffs have failed to assert a joint obligation to a third party. (R. 42, Levy's Mot. at 9.) In *Canadian Pacific*, the court found that the defendant failed to allege in a counterclaim a joint obligation between it and an involuntary plaintiff to a third party because "[t]he only debt alleged by [defendant] is the amount owed to it by [the involuntary plaintiff], making [defendant] an obligee, not an obligor." 2004 WL 2108413, at *3. Similarly, the Court finds that rather than alleging a joint obligation between Heytow and Plaintiffs that is owed to a third party, in requesting a portion of the legal fees they have expended in the Adversary Proceeding, Plaintiffs have only requested an amount that they believe Heytow owes them. Without an allegation of joint financial obligation, Plaintiffs cannot state a claim for equitable contribution of the legal fees and expenses. *Id.*

## III. Declaratory Judgment

Plaintiffs also seek a declaratory judgment that Heytow, the Estate, and the Trust, are liable for their proportionate share of any liability incurred by Plaintiffs in the Adversary Proceeding as well as for a proportionate share of legal fees and expenses incurred. The Declaratory Judgments Act provides, "[i]n a case of actual controversy brought within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Levy argues that Plaintiffs' declaratory judgment claim should be dismissed because Plaintiffs have failed to establish an equitable contribution claim. Because the Court finds, however, that Plaintiffs have sufficiently alleged an equitable contribution claim for the potential liability in the Adversary Proceeding, the Court declines to dismiss this claim.

## CONCLUSION

For the reasons stated above, the Court DENIES in part and GRANTS in part Levy's motion to dismiss Plaintiffs' second amended complaint. (R. 42.) Specifically, the Court denies the motion to the extent Plaintiffs seek contribution from Levy on the basis of potential liability that may arise in the Adversary Proceeding. The Court grants the motion to the extent Plaintiffs seek contribution from Levy of legal fees and expenses incurred in defending the Adversary Proceeding. Because the Court has declined to dismiss Plaintiffs' request for a declaratory judgment, in light of this opinion, it may be appropriate to enter the final relief sought by Plaintiffs. The parties should be prepared to discuss this issue at the next status hearing on

13

January 11, 2012, at 9:45 A.M. The parties are also encouraged to reevaluate their settlement positions.

Entered: _____
Judge Ruben Castillo
United States District Court

Date: December 27, 2011